Filed 12/18/14  In re Sebastian B. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re SEBASTIAN B., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SEBASTIAN B.,<br><br>Defendant and Appellant. | F067913<br><br>(Super. Ct. No. JJD063970)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Juliet L. Boccone, Judge.

Gordon B. Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Barton Bowers, David Andrew Eldridge and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

SEE CONCURRING OPINION

The juvenile court found appellant, Sebastian B. (minor), committed three counts of assault with a firearm and one count of possession of a concealed weapon. On appeal, the minor contends the court erred by permitting the prosecution's gang expert to rely on hearsay in violation of the minor's rights under the confrontation clause of the Sixth Amendment and, without the expert's impermissible testimony, there was insufficient evidence to support the court's gang-enhancement findings. We reject this contention and affirm the judgment.

## *FACTUAL AND PROCEDUAL BACKGROUND*[1]

The offenses arose from a walk-up shooting in August 2012. At the contested jurisdictional hearing, the parties stipulated that the Norteño and Sureño gangs were criminal street gangs within the meaning of the gang-enhancement statute. The prosecution's gang expert testified that, in his opinion, the minor and the minor's codefendant were active members of the Norteño gang, two of the victims were active members of the rival Sureño gang,[2] and the shooting was gang related.

A petition was filed, pursuant to Welfare and Institutions Code section 602, alleging the minor committed the following offenses: shooting at an inhabited dwelling (Pen. Code,[3] § 246; count 1); shooting at an occupied motor vehicle (§ 246; count 2); assault with a firearm (§ 245, subd. (a)(2); counts 3-5); and possession of a concealed weapon by a minor (§ 29610; count 6). For counts 3, 4, and 5, the petition alleged the minor used a firearm (§ 12022.5, subd. (a)(1)). For counts 1, 2, 3, 4, and 5, it alleged he committed the offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)(4)).

Following a contested jurisdictional hearing, the juvenile court found the allegations in counts 3, 4, 5, and 6 to be true, but found the allegations in counts 1 and 2

---

[1]    We omit a recitation of the facts underlying the charges against the minor because they are not necessary to resolve his contention on appeal.

[2]    A third victim of the shooting was the mother of one of the gang-member victims.

[3]    Further statutory references are to the Penal Code unless otherwise specified.

not true. The court denied the minor's subsequent motion for reconsideration and, following a contested dispositional hearing, committed the minor to the California Department of Corrections and Rehabilitation, Division of Juvenile Justice. The court found the maximum term of confinement, including potential confinement from a prior petition, was 32 years two months.

## *DISCUSSION*

The minor argues that the People's gang expert relied on hearsay evidence and that this reliance violated the confrontation clause of the Sixth Amendment.[4] This argument is based on *Crawford v. Washington* (2004) 541 U.S. 36, 53-54 (*Crawford*), in which the United States Supreme Court held that admission of "testimonial" hearsay violates the confrontation clause unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine him or her. The court did not provide a definitive statement of the meaning of "testimonial" hearsay, but one definition it mentioned with approval was: "'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" (*Id.* at p. 52.)

The People contend that this issue has been forfeited because the minor did not object to the gang expert's testimony on these grounds in the juvenile court. We agree with the minor, however, that objection was unnecessary because it would have been futile. In *People v. Thomas* (2005) 130 Cal.App.4th 1202 (*Thomas*), which the juvenile court was bound to follow, the Court of Appeal held that the admission of similar hearsay did not contravene *Crawford*.

---

[4] In supplemental briefing, the minor correctly observes that the Sixth Amendment right to confrontation has been held to apply to juvenile proceedings (*In re Damon H.* (1985) 165 Cal.App.3d 471, 477, fn. 6), and the right is also granted to minors by statute (Welf. & Inst., § 702.5).

In *Thomas*, a prosecution gang expert testified to establish the elements of the offense of gang participation under section 186.22, subdivision (a). (*Thomas, supra*, 130 Cal.App.4th at pp. 1205, 1207.) The expert testified that much of his expertise came from statements made by other officers and by gang members. (*Id.* at p. 1207.) His opinion that the defendant was a gang member was based in part on information he found in police reports and statements of gang members who said the defendant was a member. (*Id.* at p. 1206.) The defendant argued that the admission of the gang expert's testimony about the statements of other gang members violated the confrontation clause as interpreted in *Crawford*. (*Thomas,* at p. 1208.)

The Court of Appeal rejected this argument. It cited *People v. Gardeley* (1996) 14 Cal.4th 605, 618-619, which held that under Evidence Code sections 801 and 802, an expert's opinion can be based on otherwise inadmissible evidence and the expert can testify about that basis if questioned. The *Thomas* court explained that this holding survived *Crawford*: "*Crawford* does not undermine the established rule that experts can testify to their opinions on relevant matters, and relate the information and sources upon which they rely in forming those opinions. This is so because an expert is subject to cross-examination about his or her opinions and additionally, the materials on which the expert bases his or her opinion are not elicited for the truth of their contents; they are examined to assess the weight of the expert's opinion. *Crawford* itself states that the confrontation clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.' [Citation.]" (*Thomas, supra*, 130 Cal.App.4th at p. 1210.)

This holding controlled the hearsay issue in this case. A futile objection is not necessary to preserve an issue for appellate review. (*People v. Sandoval* (2007) 41 Cal.4th 825, 837, fn. 4.) We proceed to consider the merits of the issue.

4

Visalia Police Officer Shane Logan testified for the prosecution as an expert on gangs to establish the gang-relatedness of the shooting. To prove the elements of gang-relatedness under section 186.22, subdivision (b), Logan described to the juvenile court, and relied upon, police reports, field interview cards, and probation documents, reflecting the minor's numerous contacts with law enforcement over a five-year period leading up to the shooting.[5] Based on his review of these documents, his personal contacts with the minor, and speaking with other officers in the gang unit, Logan opined the minor was an active member of the Norteño gang, under the relevant criteria, because the minor did all of the following: admitted gang membership, admitted gang membership in a custodial facility, associated with gang members, was involved in gang-related crimes, wore gang clothing or attire, wrote or possessed gang material, and corresponded with or was identified in correspondences by gang members.

In contending that *Crawford* means the evidence the expert relied on and testified about should have been excluded, and that we should not follow *Thomas*, the minor cites *Williams v. Illinois* (2012) 567 U.S. ___ [132 S.Ct. 2221] (*Williams*). As we will explain, there was no majority opinion in that case, and the minor does not rely on the case's outcome (finding no constitutional violation). He relies instead on statements in Justice Kagan's dissenting opinion (joined by three other justices) and in Justice Thomas's opinion concurring in the judgment.

Williams underwent a bench trial for rape. A technician from a state laboratory testified that she analyzed a blood sample taken from Williams after his arrest and developed a DNA profile. (*Williams, supra*, 132 S.Ct. at p. 2229.) Another prosecution expert testified that she compared that profile with a profile developed by a commercial laboratory from semen found on the victim. (*Id.* at pp. 2229-2230.) The expert testified

---

[5]     Logan relied on similar sources of information to form the opinion the minor's codefendant and two victims were also active members of their respective gangs.

that the profile from Williams's blood and the profile from the semen on the victim's body matched. (*Id.* at p. 2230.) No one from the commercial laboratory testified, and the expert's implication that the data received from the commercial laboratory constituted an accurate profile developed from the semen found on the victim was based on a hearsay statement, namely, the commercial laboratory's report. (*Id*. at pp. 2230, 2235-2236.) There was also chain-of-custody evidence tending to show that the state laboratory sent the semen samples taken from the victim's body to the commercial laboratory. (*Id.* at p. 2230.)

Williams argued that the expert's implicit affirmation that the results received from the commercial laboratory were a profile of the DNA found on the victim was based on testimonial hearsay and should have been excluded under *Crawford*. (*Williams, supra*, 132 S.Ct. at pp. 2235-2236.) Justice Alito, in a plurality opinion that announced the judgment of the court but was joined only by Chief Justice Roberts and Justices Kennedy and Breyer (*id.* at p. 2227), rejected this argument on the grounds like those relied on in *Thomas*, i.e., that the hearsay was not admitted to prove the truth of the matter it asserted. (*Williams,* at p. 2236.) That the profile from the commercial laboratory was developed from the semen on the victim was "a mere premise of the prosecutor's question" which the expert "simply assumed … to be true when she gave her answer indicating that there was a match between the two DNA profiles." The import of the expert's statement was only that the two samples she compared matched each other. She was not testifying about where the samples came from, a matter that was established by other evidence. (*Ibid.*) Since it was a bench trial, there was no danger of the trier of fact failing to understand this. (*Id.* at pp. 2236-2237.)

As an alternative theory, Justice Alito's opinion also stated that the commercial laboratory's report, even if statements about it *were* admitted for the truth of the matter asserted, was not testimonial because it "was not prepared for the primary purpose of

6

accusing a targeted individual." (*Williams, supra*, 132 S.Ct. at p. 2243.) Instead, when the state laboratory sent the semen sample to the commercial laboratory, "its primary purpose was to catch a dangerous rapist who was still at large .…" (*Ibid.*)

Justice Thomas concurred in the judgment, adding the fifth vote necessary to affirm the lower courts' conclusion. (*Williams, supra*, 132 S.Ct. at p. 2255 (conc. opn. of Thomas, J.).) He rejected, however, the plurality's view that statements from the commercial laboratory's report were not admitted for the truth of the matter they asserted. (*Id.* at p. 2256.) "[S]tatements introduced to explain the basis of an expert's opinion are not introduced for a plausible nonhearsay purpose. There is no meaningful distinction between disclosing an out-of-court statement so that the fact finder may evaluate the expert's opinion and disclosing that statement for its truth," since the fact finder must decide whether the statement is true before evaluating the expert's opinion. (*Id*. at p. 2257.) That other evidence might have established the same fact is not relevant to the constitutional analysis: "The existence of other evidence corroborating the [facts forming the basis of the expert's opinion] may render any Confrontation Clause violation harmless, but it does not change the purpose of such testimony and thereby place it outside of the reach of the Confrontation Clause." (*Id.* at p. 2258.)

Justice Thomas agreed with the plurality's result for a different reason: the hearsay was not testimonial, but not for the same reason the plurality thought it was not testimonial. In Justice Thomas's view, "the Confrontation Clause reaches '"formalized testimonial materials,"' such as depositions, affidavits, and prior testimony, or statements resulting from '"formalized dialogue,"' such as custodial interrogation. [Citations.]" (*Williams, supra*, 132 S.Ct. at p. 2260.) The commercial laboratory's report "lacks the solemnity" of these types of materials and therefore was not testimonial. (*Ibid.*)

Justice Kagan wrote a dissenting opinion joined by Justices Scalia, Ginsburg and Sotomayor. (*Williams, supra,* 132 S.Ct. at p. 2264 (dis. opn. of Kagan, J.).) Like Justice

7

Thomas, the dissenters concluded that information from the commercial laboratory's report was admitted through the expert for the truth of the matter it asserted. "[W]hen a witness, expert or otherwise, repeats an out-of-court statement as the basis for a conclusion … the statement's utility is then dependent on its truth." (*Id.* at p. 2268.) Further, the hearsay was testimonial because the commercial laboratory's report was "in every conceivable respect, a statement meant to serve as evidence in a potential criminal trial." (*Id.* at p. 2275.)

The minor argues that we should combine Justice Thomas's opinion with Justice Kagan's opinion to create Supreme Court authority for the view that the evidence here at issue is testimonial hearsay, the admission of which violated the confrontation clause. Those opinions, however, do not add up to that view. They might add up to five votes for the conclusion that the evidence challenged here was admitted for the truth of the matter asserted, since Justice Thomas and the dissenters agree that the evidence disclosed as the basis of an expert's opinion must be true to support that opinion. But there were *not* five votes for any view of when statements are testimonial. The plurality thought the evidence at issue was not testimonial for one reason, Justice Thomas thought it was not testimonial for a different reason, and the dissenters thought it was testimonial under yet a third rationale. The five justices withholding their votes from the plurality's position might not agree that the evidence on which Officer Logan relied was testimonial hearsay. In light of this, the various opinions in *Williams* do not amount to authority for the minor's position.

In any event, it is not our practice to piece together various nonmajority opinions by Supreme Court justices for the purpose of anticipating what that court's conclusions might be in a case it has not considered. All we can say about *Williams* is that it upheld the admission of the testimony at issue and that there was no majority rationale. *Williams* fails to support the minor's position for this reason as well.

8

We see no adequate reason to depart from the analysis in *Thomas*, and the proper approach, in our view, is to follow *Thomas* unless and until there is authority to do otherwise. To hold that the gang expert's testimony in this case violated the confrontation clause would imply that section 186.22 prosecutions as currently practiced are unconstitutional in general, and alternative methods would be hard to find. The expert here was typical in his reliance on myriad items of hearsay from numerous police officers, probation officers and gang informants. Presenting all those witnesses at trial would be an obstacle all but insuperable. We will not impose that obstacle absent clear authority requiring it.

Because we reject the minor's claim that admission of the gang expert's testimony violated his constitutional right to confrontation, we reject his related claim that, "without the constitutionally impermissible testimony," there was insufficient evidence to support the gang enhancements. The minor implicitly concedes the gang expert's testimony, if properly admitted, was sufficient to support the gang enhancements and we see no basis in the record to conclude otherwise.

## *DISPOSITION*

The judgment is affirmed.

_____

HILL, P. J.

I CONCUR:

_____

GOMES, J.

9

**CORNELL, J.**

I am compelled by precedent to concur in the opinion and result. (*People v. Gardeley* (1996) 14 Cal.4th 605, 619 (*Gardeley*); *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; *People v. Thomas* (2005) 130 Cal.App.4th 1202.) I write separately to discuss the problem caused by the practice of allowing the prosecution's gang expert to repeat hearsay evidence on which he or she relied in forming the gang opinions *on direct examination*. As acknowledged by both counsel at oral argument, it is not the reliance on hearsay that causes the problem—it is the disgorgement of the hearsay on direct examination by the expert that is the problem.

Experts have long relied on hearsay when forming their opinions since hearsay often is the only way to acquire the basis for an opinion. Evidence Code section 801, subdivision (b)[1] specifically permits experts to rely on hearsay evidence when forming their opinions (experts limited to stating opinions that are "[b]ased on matter … perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible …").

For many years, the practice in civil and criminal cases, both in California and in federal court, was to allow the expert to rely on hearsay, but not relate it on direct examination. (See, e.g., *People v. Coleman* (1985) 38 Cal.3d 69, 92, overruled on other grounds in *People v. Riccardi* (2012) 54 Cal.4th 758, 824, fn. 32 [expert may state on direct examination matters on which he or she relied, he or she may not testify to details of such matter if they are otherwise inadmissible].) "'The rule rests on the rationale that while an expert may give reasons on direct examination for his opinions, including the

---

[1] All further statutory references are to the Evidence Code unless otherwise noted.

Evidence Code section 801 states: "Based on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion."

matters he considered in forming them, he may not under the guise of reasons bring before the jury incompetent hearsay evidence. [Citation.] Ordinarily, the use of a limiting instruction that matters on which an expert based his opinion are admitted only to show the basis of the opinion and not for the truth of the matter cures any hearsay problem involved, but in aggravated situations, where hearsay evidence is recited in detail, a limiting instruction may not remedy the problem. [Citations.]' [Citation.]" (*Ibid*.) For example, an expert relying on a treatise in forming an opinion would be allowed to identify the treatise on direct examination, but would not be allowed to read from the treatise. Opposing counsel was permitted to explore the contents of the treatise on cross-examination if he or she was so inclined.

It appears, however, that since the Supreme Court decided *Gardeley*, experts in criminal gang cases have been permitted on direct examination not only to identify the hearsay on which they rely, but also to relate this hearsay to the jury as fact. I use the term "appears" because, in my experience, an expert was not permitted to testify to such hearsay on direct examination before *Gardeley* was decided.

Prior to *Gardeley*, the prosecution expert was allowed to testify on direct that he or she relied on, for example, field interview cards, conversations with other gang members, conversations with other police officers, and reports from other crimes. The expert was not allowed to testify on direct examination as to what was on the field interview card, what other gang members or police officers said, or what information was gleaned from police reports from other crimes. Since *Gardeley*, police officers testifying as expert witnesses routinely testify on direct examination to all of the hearsay information that they have reviewed, no matter how attenuated or how many levels of hearsay the testimony contained. *Gardeley* thus appears to be the authority for this departure from the established practice. If so, it is a questionable expansion of the opinion.

The issues presented in *Gardeley* related to the sentence enhancement imposed pursuant to Penal Code section 186.22, subdivision (b)(1) when a crime is committed for the benefit of a criminal street gang. The prosecution presented evidence that the crimes of which Gardeley was convicted were committed within the meaning of this section, the jury found the allegation true, and the trial court imposed the sentence enhancement. The Court of Appeal vacated the enhancement, finding the enhancement could be imposed only if the two predicate offenses were shown to be gang related. The Supreme Court reversed the Court of Appeal.

For context, I summarize the expert testimony presented by the prosecution. The expert police officer interviewed both defendants (Gardeley and his accomplice), who admitted they belonged to the Family Crip gang and stated the gang had approximately 70 gang members. The accomplice also admitted selling cocaine shortly before the attack that resulted in the current charges. The police officer also interviewed the third accomplice involved in the attack, who pled guilty in a plea deal before trial. Over the defense's objection on hearsay grounds, the expert was permitted to testify to his interview with the third accomplice. The police officer related that the third accomplice admitted he was a gang member. The police officer also testified several other individuals admitted they belonged to the same gang. Prior to this testimony, the trial court instructed the jury that the testimony was offered not for its truth, but to establish the basis of the police officer's opinion. (*Gardeley, supra,* 14 Cal.4th at pp. 611-612.)

Next, "the prosecutor asked [the expert witness] for his opinion as to the primary purpose or activity of the Family Crip gang. [The expert witness] responded that based on investigations of hundreds of gang-related offenses, conversations with defendants and other Family Crip members, as well as information from fellow officers and various law enforcement agencies, it was his opinion that the Family Crip gang's primary purpose was to sell narcotics, but that the gang also engaged in witness intimidation and

3

other acts of violence to further its drug-dealing activities." (*Gardeley, supra,* 14 Cal.4th at p. 612.)

In discussing the expert witness's testimony, the Supreme Court began by reviewing the general law pertaining to expert witnesses, including sections 801 and 802. The Supreme Court observed that if the "threshold requirement of reliability is satisfied, even matter that is ordinarily *inadmissible* can form the proper basis for an expert's opinion testimony. [Citations.] And because Evidence Code section 802 allows an expert witness to 'state on direct examination the reasons for his opinion and the matter … upon which it is based,' an expert witness whose opinion is based on such inadmissible matter can, when testifying, describe the material that forms the basis of the opinion. [Citations.]" (*Gardeley, supra,* 14 Cal.4th at pp. 618-619.) The Supreme Court next reiterated that the trial court "'has considerable discretion to control the form in which the expert is questioned to prevent the jury from learning of incompetent hearsay'" and "has discretion 'to weigh the probative value of inadmissible evidence relied upon by an expert witness … against the risk that the jury might improperly consider it as independent proof of the facts recited therein.' [Citation.] This is because a witness's on-the-record recitation of sources relied on for an expert opinion does not transform inadmissible matter into 'independent proof' of any fact. [Citations.]" (*Id.* at p. 619.) The Supreme Court then concluded that "Consistent with these well-settled principles, the trial court in this case ruled that [the expert witness] could testify as an expert witness and could reveal the information on which he had relied in forming his expert opinion, including hearsay." (*Ibid.*)

This analysis appears consistent with established precedent. The prosecution's expert witness, while he testified to the hearsay statements of the third accomplice and other gang members, relied on (1) his investigation of hundreds of gang-related offenses, (2) conversations with gang members, (3) conversations with defendants,

4

(4) conversations with fellow officers, and (5) conversations with law enforcement agencies in forming his opinion about the primary purpose of the Family Crip gang. (*Gardeley, supra,* 14 Cal.4th at p. 620.) Nothing in *Gardeley* suggests the expert witness testified to the content of each of these interviews, investigations, and conversations.

Nonetheless, appellate courts have approved of the prosecutorial practice of eliciting from gang experts otherwise inadmissible hearsay under the theory that such testimony is necessary to establish the basis of the expert's opinion. For example, in *People v. Valdez* (1997) 58 Cal.App.4th 494, the Court of Appeal considered such testimony and concluded, "Because an expert's need to consider extrajudicial matters and a jury's need for information sufficient to evaluate an expert opinion may conflict with an accused's interest in avoiding substantive use of unreliable hearsay, disputes in this area must generally be left to the trial court's sound judgment. [Citation.] [¶] Under *Gardeley*, we find it well within the trial court's discretion to permit [the expert] to relate in detail the large amount of hearsay upon which he relied." (*Id.* at pp. 510-511.) The appellate court also noted that the trial court repeatedly admonished the jury that it could only consider the hearsay statement as evidence of the basis of the expert's opinion and should not be considered for its truth. (*Id.* at p. 511.)

The rationale for allowing hearsay into evidence for the nonhearsay purpose of forming the basis for the expert's opinion is now under significant criticism, as it should be. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. (§ 1200, subd. (a).) For such out-of-court statements to form a relevant and reliable basis for a gang expert's testimony, such statements must be true. Therefore, not only is the gang expert relying on the hearsay statements to be true because they purportedly form the basis of his opinion, the prosecution expects the jury to accept these hearsay statements as true or the jury is required to reject the expert's opinion as lacking foundation. "For 'the law does not accord to the expert's opinion the same degree of

5

credence or integrity as it does the data underlying the opinion. Like a house built on sand, the expert's opinion is no better than the facts on which it is based.' [Citation.]" (*Gardeley, supra,* 14 Cal.4th at p. 618.) The inevitable conclusion is that these statements are offered for their truth, and in most cases the defendant has no ability to challenge them.

The defendant's only protection is the trial court's admonition to the jury that these hearsay statements are to be considered only as a basis for the expert's opinion. Considering the highly inflammatory nature of gang crimes in general, it seems unlikely this admonition is truly effective. One merely needs to look at the Legislature's stated reasons for enacting the Street Terrorism Enforcement and Prevention Act (Pen. Code, § 186.20 et seq.) to doubt the effectiveness of the admonition. "The Legislature, however, further finds that the State of California is in a state of crisis which has been caused by violent street gangs whose members threaten, terrorize, and commit a multitude of crimes against the peaceful citizens of their neighborhoods. These activities, both individually and collectively, present a clear and present danger to public order and safety and are not constitutionally protected. The Legislature finds that there are nearly 600 criminal street gangs operating in California, and that the number of gang-related murders is increasing." (*Id.,* § 186.21.) Combining this crisis mentality with the publicity attendant to many of these crimes creates the undeniable danger that once a jury learns of the multitude of hearsay statements offered by the prosecution, a defendant is doomed to conviction, regardless of the strength of the evidence that he or she actually committed the charged crime.

The problems caused by allowing extensive hearsay evidence in gang cases can be resolved easily. Returning to the former practice of allowing reliance on, and reference to, but not the disgorgement of this hearsay evidence on direct examination will eliminate unnecessary tainting of the jury and also will avoid any possible confrontation clause

6

concerns related to *Crawford v. Washington* (2004) 541 U.S. 36 and its progeny, as well as future Sixth Amendment jurisprudence.  This solution would return expert testimony in gang cases to the practice still followed in civil cases and in federal court.

The justices of the United States Supreme Court and the California Supreme Court who have addressed the admissibility of this evidence now question it.  Two published cases dealing with this issue, and the testimonial nature of the evidence under *Crawford*, have been granted review by the California Supreme Court (*People v. Sanchez* (2014) 223 Cal.App.4th 1, review granted May 14, 2014, S216681; *People v. Archuleta* (2014) 225 Cal.App.4th 527, review granted June 11, 2014, S218640).  We all await further guidance.


_____

CORNELL, J.